United States Court of Appeals,

Fifth Circuit.

No. 95-50559.

UNITED FARMERS AGENTS ASSOCIATION, INC.; Thomas J. Vinson; Robert D. Moon, Plaintiffs-Appellants,

v.

FARMERS INSURANCE EXCHANGE, a California Reciprocal or Inter-Insurance Exchange; Fire Insurance Exchange, a California Reciprocal or Inter-Insurance Exchange; Truck Insurance Exchange, a California Reciprocal or Inter-Insurance Exchange; Mid-Century Insurance Company; Farmers New World Life Insurance Company, Defendants-Appellees.

July 25, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before GARWOOD, DAVIS and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

The United Farmers Agents Association (UFAA) and Farmers insurance agents Thomas J. Vinson and Robert D. Moon appeal the district court's order granting Farmers Insurance summary judgment and dismissing their antitrust class action. We AFFIRM.

I.

Farmers Insurance is a group of five insurance companies with approximately 14,000 independent contractor agents in 29 states. Under the contract between Farmers and its agents, Farmers is obligated to provide policyholder information to the agents. It has always provided this information through manual records in paper and book form. In 1981, Farmers set up a computer system, the Farmers Agency Network System (FANS), to allow agents on-line access to this information in addition to the traditional manual

access. Agents who wished to gain electronic access to policyholder information through FANS were required to purchase a specially configured IBM computer from Farmers or to use another agent's IBM computer purchased from Farmers.

The written agreement between Farmers and agents who purchased computers and gained access to FANS specifically stated that, absent written agreement from Farmers, only computers purchased through Farmers would be allowed to access FANS. Farmers' policy was to never grant a written waiver of this provision. This policy continued until 1993 when Farmers began allowing agents to use personal computers and computers purchased from third-party vendors to access FANS.

UFAA, Vinson and Moon (plaintiffs) filed this action as an antitrust class action on behalf of all Farmers agents alleging that Farmers illegally tied electronic access to policy information to the purchase of computers from Farmers. The district court certified the class for liability purposes under Federal Rule of Civil Procedure 23(b)(1) but deferred a ruling on certification of a damages class pending the outcome on liability. The district court referred discovery motions and other dispositive and non-dispositive motions to a magistrate judge who recommended that the district court grant summary judgment in favor of Farmers. On April 19, 1995, the district court adopted the magistrate's Report and Recommendation in full and dismissed the plaintiffs' suit. On appeal, plaintiffs argue that the district court erred by granting

Farmers' motion for summary judgment.[1]

## II.

### A.

Plaintiffs argue that Farmers' policies regarding electronic access to FANS constitute a per se illegal tying arrangement[2] and

---

[1]Plaintiffs also assert that the district court erred by failing to review the summary judgment record de novo before adopting the magistrate judge's recommendation, using an improper standard in deciding whether summary judgment was appropriate and failing to certify plaintiffs as a damages class under Federal Rule of Civil Procedure 23(b)(3). Our de novo review of the record and use of the proper standard for granting summary judgment cure the first two of these asserted errors. Our affirmance of the district court's decision to grant summary judgment makes it unnecessary for us to consider the third.

[2]Tying exists when "a seller refuses to sell one product, which a buyer desires, unless the buyer also agrees to purchase a second product, which is not otherwise desired from this seller on the offered terms.... The desired product is called the "tying' product; the other is the "tied' product." 9 Phillip E. Areeda, *Antitrust Law,* ¶ 1700a (Little, Brown & Co., 1991). *See also Eastman Kodak Co. v. Image Technical Services,* 504 U.S. 451, 461-62, 112 S.Ct. 2072, 2079-80, 119 L.Ed.2d 265 (1992).

A tying arrangement is per se illegal when it has the following characteristics: (1) Two separate products (as opposed to components of a single product), (2) The two products are tied together or customers are coerced, (3) The supplier possesses substantial economic power over the tying product, (4) The tie has an anticompetitive effect on the tied market, and (5) The tie affects a not insubstantial volume of commerce. 9 Areeda, *Areeda* at ¶ 1702. *See also Kodak,* 504 U.S. at 461-62, 112 S.Ct. at 2079-80; *Jefferson Parish Hospital Dist. No. 2 v. Hyde,* 466 U.S. 2, 11-28, 104 S.Ct. 1551, 1558-66, 80 L.Ed.2d 2 (1984).

Tying arrangements and other restraints of trade that do not fit the criteria for per se illegality are evaluated under the Rule of Reason. *Jefferson Parish Hospital Dist.,* 466 U.S. at 29, 104 S.Ct. at 1567 (1984). Under the Rule of Reason, the plaintiff has the burden of proving that the tying arrangement "unreasonably restrained competition." *Id.* This burden requires an inquiry into the actual effect of the tying arrangement on competition in the tied market. *Id.*

allege that the relevant market[3] in which Farmers is illegally exercising market power is the market for electronic access to Farmers policy information.  Farmers responds by arguing that the relevant market should be insurance sales and even if the court accepts the plaintiffs' argument that a separate market exists for electronic access to Farmers policy information, Farmers' has no power in the market for electronic access to Farmers policy information because of intense competition in the insurance sales market.  We find that Farmers has no market power in the relevant market (insurance sales) and no market power even in the plaintiffs' alleged relevant market (electronic access to policy information).  Market power is a necessary prerequisite to an illegal tie so we need not make any further inquiry into whether Farmers' policies constitute an illegal tie.

Under the undisputed facts of this case, we agree with Farmers that the relevant market is the market for insurance sales.  The only product that Farmers markets to consumers is insurance.  We agree with the magistrate that the summary judgment record is "replete with evidence that Farmers Insurance sells insurance, *not* electronic access, *not* computers."  (emphasis in original).

---

[3]The relevant market in an antitrust inquiry is defined by the cross-elasticity of demand between a given product and its substitutes.  2 Phillip E. Areeda & Donald F. Turner, *Antitrust* at ¶ 519a.  The cross-elasticity of demand for substitutes measures consumers' propensity to switch from one product to another, similar product when relative prices change.  *See* William J. Baumol & Alan S. Blinder, *Economics: Principles and Policy* at 343 (Harcourt Brace Jovanovich, Inc., 1979).  Products similar enough that a small relative price change causes consumers to substitute one for another are in the same market. 2 Areeda & Turner, *Antitrust* at ¶ 525a.

Plaintiffs' alleged market consists of a single brand (Farmers) and a tying product (electronic access to policy information) that has never been available to anyone other than Farmers agents. The information that the alleged tying product allows agents to access has always been available to agents in book form for free. Additionally, plaintiffs' own attorney could offer no justification at oral argument for choosing electronic access to Farmers policy information as the relevant market other than that he was trying to define the market as narrowly as possible (in order to make it look as if Farmers had market power). Plaintiffs have not alleged that Farmers has a superior or unique insurance product that allows it to charge consumers more for policies or pay agents less for selling them and they have shown no evidence that new Farmers agents would face significant information or switching costs[4] in deciding whether to sell Farmers insurance or the insurance of another company. The agents have failed to give us any reason to view the market for electronic access to Farmers policy information as the relevant market.

This suit is essentially an intracompany dispute over how to run a computer system, not a valid claim under antitrust laws. Economic power derived from contractual agreements such as franchises or in this case, the agents' contract with Farmers, "has

---

[4]Information costs in this case are the costs incurred by new agents in finding out how much Farmers will charge for electronic access to policy information and other services after they begin selling Farmers policies. Switching costs are the costs incurred in switching from selling Farmers insurance to selling the policies of another company. *Compare Kodak,* 504 U.S. at 473-77, 112 S.Ct. at 2083-88.

nothing to do with market power, ultimate consumers' welfare, or antitrust." Benjamin Klein & Lester F. Saft, *The Law and Economics of Franchise Tying Contracts,* 28 J.Law & Econ. 345, 356 (1985). We agree with the magistrate judge and the district court that plaintiffs fail to raise a question of material fact as to whether electronic access to Farmers policy information is the relevant market for our inquiry.

The relevant market for an inquiry into market power in this case is the market for insurance sales and the agents do not contend that Farmers could exercise (or has exercised) market power in that market. The agents' claim is not, therefore, cognizable under antitrust laws and the magistrate judge and the district court correctly determined that Farmers was entitled to summary judgment.

### B.

Even if we accept the plaintiffs' alleged market for electronic access to policy information as the relevant market, the plaintiffs have failed to prove that Farmers had or exercised market power. Farmers has 100% of the market share in the tying product (electronic access to policy information). However, this does not mean that Farmers has market power in the tying market. In fact, undisputed evidence showing that the markets for insurance sales and agents are highly competitive makes plaintiffs' argument that Farmers has market power in the market for its policy holder information highly unlikely in the absence of prohibitive

6

information costs or the ability to price discriminate[5] between agents with high switching costs and those with low or no switching costs. *See Eastman Kodak Co. v. Image Technical Services,* 504 U.S. 451, 475, 112 S.Ct. 2072, 2086-87, 119 L.Ed.2d 265 (1992). Plaintiffs have cited no evidence that information or switching costs were high for most agents and offer no evidence that Farmers attempted to engage in price discrimination.

The plaintiffs argue that *Kodak* compels us to deny Farmers motion for summary judgment. However, their reliance on *Kodak* is misplaced. The Supreme Court's decision in *Kodak* was a rejection of Kodak's assertion that market power could never exist over repair parts in any case where the defendant did not have market power over the earlier-purchased machines needing those parts. Critically, the plaintiffs in *Kodak* produced evidence that Kodak was charging above market prices for its service and was engaged in price discrimination in favor of the knowledgeable customers who could most easily obtain information or switch companies. *Kodak,* 504 U.S. at 465, 476, 112 S.Ct. at 2081, 2087. By contrast, the plaintiffs in this case have failed to proffer **any** specific evidence that the computers sold by Farmers were sold at

---

[5]Price discrimination is charging different buyers different prices for the same item. A price-discriminating monopolist charges each consumer as much as the consumer is willing to pay for an item. Consumers who desperately need a particular product are charged a high price for it while those who do not really need the product and will refuse to buy it rather than pay a high price are charged a relatively low price. A price-discriminating monopolist makes as much money as possible on its product because it charges high prices to the people who are willing to pay high prices without losing sales to people willing to pay only a low price. *See* 2 Areeda & Turner *Antitrust,* ¶ 514a.

above-market prices or that other equipment of comparable quality was available for less. The only summary judgment evidence plaintiffs submitted was general testimony that third party vendors of used IBM system 36 computers were selling them for less than Farmers and in larger quantities. They offer no evidence regarding price, quality, reliability or the expense necessary to configure these computers to FANS. Except for general disclaimers, plaintiffs offered no assurance that these used computers would maintain the security of Farmer's policy information and would not introduce viruses into the system. Additionally, plaintiffs offer no evidence of an appropriate market price for electronic access to policy information and have failed to even allege that the tied bundle of electronic access and computers cost more than the sum of their market prices. *See Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 672-73 (7th Cir.1985) *cert. denied* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986) ("unless plaintiff shows that the package price was elevated, the suit must be dismissed without further ado"); *Kypta v. McDonald's Corp.,* 671 F.2d 1282 (11th Cir.) *cert. denied,* 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 109 (1982) (same). In sharp contrast to *Kodak* where the plaintiffs supported their claims of market power with evidence that Kodak charged above-market prices and engaged in price discrimination, the plaintiffs here simply allege that Farmers charged prices above the market price for computers without offering any evidence of what the market price for reliable computers was or alleging that the bundle of products, taken together, was sold at an above-market

8

price.

The plaintiffs have failed to raise a question of material fact as to whether Farmers has sufficient market power in the market for electronic access to Farmers policy information to force agents to buy computers at higher than market prices. The fact that Farmers required agents to purchase a computer from it in order to obtain electronic access to policy information does not prove that Farmers had market power. *See Breaux Bros. Farms, Inc. v. Teche Sugar Co.,* 21 F.3d 83, 86-87 (5th Cir.) *cert. denied --- U.S. ----,* 115 S.Ct. 425, 130 L.Ed.2d 339 (1994). As noted above, the summary judgment record contains no evidence that the computers were sold at a premium price or that acceptable alternatives were available for less. It also contains no evidence of what electronic access to policy information should cost. In fact, the summary judgment record strongly supports Farmers' argument that it had no power in the electronic-access-to-policy-information market.

Plaintiffs do not dispute that the insurance sales market is highly competitive. Absent high information or switching costs, intense competition in the market for insurance agents will force Farmers to pay competitive wages and preclude it from imposing above-market prices on its agents for the services it provides them. Additionally, availability of manual access to policy information was a good substitute for electronic access. This seriously limited Farmers' ability to charge more than the market

price for electronic access to the same information.[6]  The summary judgment record here contains no evidence that information or switching costs were high enough to produce any substantial market power for Farmers and no evidence that manual access to policy information was so seriously inadequate as a substitute for electronic access as to allow Farmers to exercise market power over electronic access.

Information and switching costs for Farmers agents hired after 1981 when FANS was implemented were virtually nonexistent.  The summary judgment record shows that Farmers openly required agents wishing to access FANS to do so only with computers purchased from Farmers.  Any agent hired would have known of the two ways to obtain policy information and could have easily inquired about the cost of electronic access.  The computer installment contract clearly states that no non-Farmers computer will be allowed to access FANS without the written consent of Farmers.  Division manager Bob Akers testified that he regularly told his agents that Farmers' policy was to not allow any computers purchased from third-party vendors to access FANS.  Internal correspondence shows that a corporate officer who led an agent to believe that he could hook up his computer to FANS even though it was purchased from a

---

[6]Substitutes limit market power by giving consumers an alternative to paying an above-market price for a product.  The existence of a good substitute at a competitive price (in this case manual access to policy information for free) prevents a producer from selling its product at an above-market price.  An attempt to raise price of the product above a competitive level will be met with a shift in demand from the product to its substitute.  *See* 2 Areeda & Turner, *Antitrust* at ¶ 525a.

third party was quickly reprimanded and informed that Farmers policy was to not allow FANS access to any computers purchased from third parties. The plaintiffs produce no evidence that suggests that this information was difficult to obtain. Agents would clearly have become aware of Farmers' policy long before they faced significant switching costs.

If an agent, unhappy with Farmer's computer policy, wished to move to a new company, he was free to do so. Switching costs for most agents were very low. The only switching cost evident in the summary judgment record is the inability to continue earning commission from Farmers policies which agents have already sold. New agents have virtually no switching costs because they have sold no policies or only a few. These agents can switch to selling insurance for another insurance company without incurring any significant cost. The only group of agents that faced switching costs of any significance were Farmers agents hired before 1981 when FANS was implemented. Switching costs for these agents could have been high because the agents could not take their customers with them if they left. Policyholders are Farmers' customers under the terms of the agency agreement and departing agents would be forced to give up the income from the numerous policies they had sold in previous years.[7]

---

    [7]It is important to note that even agents who faced high switching costs in the decision to switch insurance companies could easily have continued selling policies with the manual system. Farmers clearly did not require agents to use FANS and continued to supply its agents with manual policy information for free. Even, if manual access to policy information was inferior to electronic access, it was a reasonably good substitute that

11

The absence of significant information costs to the agents and the existence of switching costs for some agents but not for others means that in order for Farmers to have exercised market power in the markets for electronic access and computers, it must have engaged in price discrimination. Farmers could exercise market power and sell electronic access or computers at above-market prices only to those agents with high switching costs. Agents with low switching costs would refuse to pay an above-market price for the bundled electronic access and computers. Rather than pay a premium, these agents could simply leave Farmers and move to another insurance company.

Plaintiffs submit no evidence that Farmers charged agents with many policies in force more than it charged new agents or those with few policies in force. They do not even allege that Farmers attempted to engage in price discrimination. Without an allegation that price discrimination occurred or evidence that Farmers agents faced prohibitive costs in discovering Farmers' computer policy, the plaintiffs cannot seriously argue that Farmers had or exploited any market power. Plaintiffs fail to raise a question of material fact as to whether Farmers had market power in the market for electronic access to policy information.

*Conclusion*

We agree with the district court and the magistrate judge that electronic access to policy information is merely a component of

---

would have seriously limited Farmers' ability to charge above-market prices for electronic access and computers even to those agents with many policies in force.

12

Farmers' insurance product and that the relevant market for an antitrust inquiry is the insurance sales market. Farmers exercised no market power in this highly competitive market and plaintiffs' antitrust action fails for this reason alone. Additionally, even if we accept plaintiffs' alleged markets as the relevant markets for our inquiry, plaintiffs still fail to raise a question of material fact on the issue of whether Farmers has market power. Plaintiffs fail to offer any evidence of above-market computer prices or high switching or information costs. They present no evidence that Farmers engaged in price discrimination and they offer no plausible economic argument that would support market power. For all of these reasons, we find that plaintiffs have failed to raise a question of material fact as to whether Farmers violated antitrust laws. The judgment of the district court is, therefore, AFFIRMED.

AFFIRMED.