**SMS SYSTEMS MAINTENANCE SERVICES, INC., Plaintiff,**

v.

**DIGITAL EQUIPMENT CORP., Defendant.**

**No. CIV. A. 96–10429–EFH.**

United States District Court, D. Massachusetts.

July 30, 1998.

Ronald F. Kehoe, Warner & Stackpole, Boston, MA, Anne Fiero, Coudert Brothers, San Francisco, CA, Stephen M. Hudspeth, Edward D. Hassi, Coudert Brothers, New York, NY, for SMS Systems Maintenance Services, Inc., Plaintiff.

Shepard M. Remis, J. Anthony Downs, Goodwin, Procter & Hoar, Boston, MA, Jesseca R. Bernanke, Beatie, King & Abate, New York, NY, for Digital Equipment Corp., Defendant.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Plaintiff SMS Systems Maintenance Services, Inc. ("SMS") has charged Defendant

Digital Equipment Company ("Digital") with attempting to monopolize the market for repair and maintenance of Digital computers, in violation of the Sherman Act, 15 U.S.C. § 2. SMS has also alleged state law claims for Tortious Interference with Prospective Contractual Relations (Count II), Tortious Interference with Contractual Relations (Count III), Unfair and Deceptive Trade Practices in violation of Mass.Gen.L. ch. 93A, § 11 (Count IV), and Injunctive Relief (Count Five).

The case arises out of Defendant Digital's decision to offer extended warranties covering maintenance and service on certain lines of Digital computers. Digital manufactures and sells a variety of computer lines and computer products. Digital also provides maintenance and service on its computer products. Prior to 1994, Digital provided many customers with maintenance service under an optional one-year warranty offered with the computer products it sold. In 1994, Digital amended its warranty policy on certain computers. In order to promote sales of its new Alpha computers, Digital offered an extended three-year warranty on those computers. Digital embedded the costs associated with the warranty into the price of the Alpha computers. Digital also made the three-year warranty mandatory, refusing to offer a reduction in price to customers who asked to purchase the computer equipment without the extended warranty. In 1995, Digital broadened the extended warranty program by offering a mandatory three-year warranty on certain VAX computer products.

Plaintiff SMS is an independent service organization which specializes in the repair and maintenance of Digital computers. SMS provides maintenance and service to corporations and agencies that own Digital computers. SMS contends that Digital's new mandatory extended warranty violates federal antitrust law by making it difficult for SMS and other independent service organizations to compete with Digital in the market for service and maintenance of Digital computers.

SMS' theory of liability on its antitrust claim is that Digital violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by attempting to monopolize the market for servicing and maintaining Digital computers. The elements of monopolization under Section 2 are well settled:

> The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power.

*Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 480, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

■ The key issue in dispute in this case is the definition of the relevant market. SMS asserts that the relevant market is the derivative aftermarket for servicing and maintaining Digital computers. Digital has approximately 91 percent of this narrow service market. If this service market is the relevant market, SMS will have satisfied the "monopoly power" element of its Section 2 claim. In support of its position that the aftermarket is the relevant market, SMS relies on the Supreme Court decision in *Kodak. Id.* In *Kodak,* the Supreme Court held that, in certain circumstances, the derivative aftermarket for services could be the relevant market for antitrust purposes. *Id.* at 476–477, 112 S.Ct. 2072.

Defendant Digital opposes this narrow definition of the relevant market. Digital argues that, as a matter of law, the relevant market for antitrust purposes is the primary market for the sale of computer equipment. Digital accounts for less than 30 percent of the computer equipment market. If the computer equipment market is determined to be the relevant market, SMS has conceded that it will be unable to satisfy the monopoly power requirement for a claim under Section 2.[1] In support of its position that the primary equipment market is the relevant market,

---

1. "Thirty percent of the computer market is not enough to confer substantial market power unless there are high barriers to competition. Rapid and continuing entry into the computer business, and the ease with which existing firms increase output, dispel any concerns about barriers to entry." *Digital Equipment Corp. v. Uniq Digital Technologies, Inc.,* 73 F.3d 756, 761 (7th Cir.1996).

Digital distinguishes *Kodak* from the case at bar and cites a number of circuit court decisions which have rejected attempts by plaintiffs "to shoehorn their allegations into [the] *Kodak* 'derivative aftermarket' model." *Lee v. Life Ins. Co. of North America,* 23 F.3d 14, 18 (1st Cir.1994). The Court is persuaded by the defendant's argument.

*Kodak* is distinguishable from the case at bar because in *Kodak* the manufacturer announced a restrictive change in its replacement parts policy which had a direct impact on "locked in" customers who had already purchased Kodak copiers. *Kodak,* 504 U.S. at 476–477, 112 S.Ct. 2072. Kodak's changed policy was to limit the availability of replacement parts for copiers by selling replacement parts "only to buyers of Kodak equipment who use Kodak service or repair on their machines." *Id.* at 458, 112 S.Ct. 2072. This new policy effectively limited the service and maintenance options available to customers who had purchased Kodak copiers in the past. The instant case is inapposite. Digital's new extended warranty did not limit the options available to customers who had purchased Digital computers in the past. In fact, the new warranty had no direct impact upon Digital's relationship with customers who had purchased Digital computer equipment prior to the implementation of the new warranty policy. Since Digital's new warranty policy affected only future customers, there is no *Kodak*-type "lock-in" in this case.

Moreover, in *Kodak,* the Supreme Court itself acknowledged that the bundling of products and services promotes competition and does not violate the antitrust laws.[2] In particular, the court stated that:

> It is undisputed that competition is enhanced when a firm is able to offer various marketing options, including bundling of support and maintenance service with the sale of equipment. Nor do such actions run afoul of the antitrust laws.

*Kodak,* 504 U.S. at 478–479, 112 S.Ct. 2072 (*citing Jefferson Parish Hosp. Dist. No. 2 v.*

*Hyde,* 466 U.S. 2, 12, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984)).

All of the circuit courts which have addressed the issue agree with this language in *Kodak.* In *Lee v. Life Ins. Co. of North America,* 23 F.3d 14 (1st Cir.1994), the Court of Appeals for the First Circuit rejected plaintiffs' attempt to assert that the relevant market for an antitrust claim was the narrow aftermarket for health care services for undergraduate students enrolled at the University of Rhode Island. Instead, the Court ruled that the relevant market for antitrust purposes was the primary (university education) market. *Id.* at 20. The critical question according to the Court was whether the relevant policy and pricing information was available to customers before they made the initial purchase. In *Lee,* the Court of Appeals analyzed *Kodak* and noted that:

> Had previous customers known, at the time they bought their Kodak copiers, that Kodak would implement its restrictive parts-servicing policy, Kodak's "market power," i.e. its leverage to induce customers to purchase Kodak servicing could only have been as significant as its AEP [appreciable economic power] in the copier market.

*Id.*

The determinative factor for the Court of Appeals in *Lee* was that, unlike the customers in *Kodak,* all of the potential customers in *Lee* knew in advance about the allegedly restrictive health care services policy prior to purchasing the primary product; university education. The Court of Appeals stated:

> In the instant case, however, students know before their matriculation that they are buying a URI 'package' that includes at least two 'tied' products—a URI education and on-campus health care service and insurances. As appellant failed to assert a colorable claim that URI had [market power] in the primary (university education) market, no *Kodak*-type 'lock-in'

---

**2.** In 1992, both Compaq and IBM, two of Digital's competitors in the market for the sale of computer equipment, began to offer three-year warranties on certain computers. Compaq's

warranty was mandatory and the costs associated with the warranty were included in the price of the computer equipment.

could have occurred in subsequent semesters. *Id.*

The Court of Appeals for the Seventh Circuit used the same reasoning in affirming summary judgment for Digital which defended an antitrust counterclaim in *Digital Equipment Corporation v. Uniq Digital Technologies*, 73 F.3d 756 (7th Cir.1996). In that case, Uniq's counterclaim alleged that Digital was attempting to monopolize the market for the sale of operating systems used with Digital computers by bundling its operating system with all Digital computers it sold. The Court of Appeals for the Seventh Circuit held that since purchasers knew in advance about the bundling, the relevant market for antitrust purposes was the primary equipment market, not the derivative aftermarket. *Id.* at 761–763. Interestingly, in dicta, the *Digital* Court directly addressed the issue faced by the Court in this case:

> Suppose DEC [Digital] includes extensive manuals, or "free" support services, or operating systems, that consumers do not want ... "Free" tech support is not free; customers pay for it in the price of the product, and a marginal cost of zero for calling means that it will be overused, and hence can add quite a bit to the price of a computer or a software package. Instead of paying DEC for something they do not want, customers will turn elsewhere—for other firms can increase their profit by satisfying users' demands ... In a competitive market, pig-headed refusal to satisfy customers' preferences, or an attempt to charge for unwanted items, does not lead to monopoly prices; instead it leads to ruin as rivals step in to take the business. Preserving that market process, rather than regulating through the judicial system, is the objective of the antitrust laws.

*Id.* at 762.

The Court of Appeals for the Sixth Circuit agrees with this reasoning. In *PSI Repair Services, Inc. v. Honeywell*, 104 F.3d 811 (6th Cir.1997), the Court of Appeals ruled that a manufacturer was free to bundle products and service so long as the relevant pricing information was available to customers prior to the sale. *Id.* at 820. The Court specifically held that an antitrust plaintiff cannot succeed on a *Kodak*-type theory when the defendant has been otherwise forthcoming about its pricing structure and service policies and has not changed its policies so as to affect the service options available to prior purchasers. *Id.* The Court of Appeals ruled, as a matter of law, that where the allegedly restrictive policy did not affect customers who had already purchased the primary product, the relevant market was the primary equipment market, not the derivative aftermarket. *Id.* The Third Circuit and Fifth Circuit have also accepted this interpretation of *Kodak*. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir.1997); *United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 233 (5th Cir.1996).

The Court is persuaded by this great weight of authority. Since Digital's warranty policy was prospective and since information about Digital's mandatory three-year warranty has always been available to potential customers in advance, there is no *Kodak*-type lock-in in this case. The relevant market for antitrust purposes is the primary equipment market not the derivative aftermarket for service and maintenance of Digital computers. Since Digital does not have monopoly power in the market for sale of computer equipment, SMS has failed to meet an essential element of its Section 2 antitrust claim.

The Court's determination that SMS has failed to meet its burden under Section 2 of the Sherman Act is not necessarily dispositive. During oral argument, the plaintiff articulated for the first time a supplemental tying theory of liability, alleging that the mandatory nature of the extended warranty constituted an illegal tying. Although plaintiff claimed that it had not filed and was not making a tying claim, the issue was raised at oral argument. Therefore, the Court will address the tying issue.

■ "A tying arrangement is an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *Kodak*, 504 U.S. at 461, 112 S.Ct. 2072. Such an arrangement is violative of Section 1 of the Sherman Act, 15 U.S.C. § 1, if the seller has

appreciable economic power in the tying market and if the arrangement affects a substantial volume of commerce in the tied market. *Id.*

In the instant case, there has been no illegal tying. The tying market in these circumstances is the computer equipment market. As noted above, Digital does not have appreciable economic power in that market. Hence, Digital's policy of tying a mandatory warranty with its equipment cannot be found in violation of Section 1 of the Sherman Act.

For the foregoing reasons, the Court grants summary judgment for the defendant on the plaintiff's federal antitrust claim.

In the absence of any federal question, this Court declines to exercise supplemental jurisdiction over the remaining state law claims involving two Massachusetts corporations. All state law claims are dismissed without prejudice.

SO ORDERED.